# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| Blvck Bvlled Investments, LLC, | ) | CASE NO. 20-62128 |
| | ) | |
| Debtor. | ) | |

## DEBTOR'S PLAN OF REORGANIZATION

### ARTICLE I
### SUMMARY

This Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of Blvck Bvlled Investments, LLC (the "Debtor") from future income of the business.

This Plan provides for 3 (three) classes of secured claims and one class of equity security holders. There are no unsecured creditors. This Plan also provides for the payment of administrative claims in full as of the effective date of this Plan.

All creditors and equity security holders should refer to Articles III through VI of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

### DEFINITIONS

1.1 "Administrative Bar Date" means the first Business Day thirty (30) days after the Effective Date, and is the date by which all Administrative Claims must be filed with the Bankruptcy Court, except as otherwise provided in the Plan.

1.2 "Administrative Claim" means any cost or expense of administration of the Estate allowed under § 503(b) of the Bankruptcy Code, proof (or request for payment or approval) of which is timely filed by the Administrative Bar Date, and any fees and charges assessed against the estate under 28 U.S.C. § 1930.

1.3 "Allowed Claim" means a Claim against the Debtor(s) (a) which is listed in the Debtor's Schedules (as amended), other than a Disputed Claim or a Claim to which an objection has been interposed; or (b) proof of which has been timely filed and with respect to which no timely filed objection to the allowance thereof has been interposed; or (c) which has been allowed by the Court in a Final Order, but only in the amount allowed. An Allowed Claim shall not include unmatured or post-petition interest unless otherwise stated in the Plan.

1.4 "Assets" means all property, real or personal, in which the Debtor(s) has/have an interest.
1.5 "Avoidance Actions" means proceedings commenced under Chapter 5 of the Bankruptcy Code.

1.6 "Ballot" means the form distributed to each holder of an impaired Claim on which is to be indicated, among other things, acceptance or rejection of the Plan.

1.7 "Bankruptcy Code" means Title 11 of the United States Code.

1.8 "Bankruptcy Court" means the United States Bankruptcy Court for the Northern District of Georgia, or if such court ceases to exercise jurisdiction over the Case, the court or adjunct thereof that exercises jurisdiction over the Case.

1.9 "Bankruptcy Rules" means (i) the Federal Rules of Bankruptcy Procedure, and (ii) the Local Bankruptcy Rules for the Bankruptcy Court, in either case, as now in effect or hereinafter amended (except that all time periods herein shall be calculated in accordance with the Bankruptcy Rules as in effect on the date hereof).

1.10 "Bar Date" means the date designated by the Bankruptcy Court as the last date for filing a proof of claim or proof of interest, as the case may be, against the Debtor.

1.11 "Business Day" means any day except Saturday, Sunday, or other day on which commercial banks in the State of Georgia are authorized or required by law to close, or any other "legal holiday" as defined in Bankruptcy Rule 9006(a).

1.12 "Case" means the case commenced under Chapter 11 of the Code pending in the Bankruptcy Court, and bearing Case No. 20-62128.

1.13 "Cash" means United States currency, drafts, checks, deposit accounts or other cash equivalents.

1.14 "Claim" means a claim as defined in § 101(5) of the Code.

1.15 "Claimant" means a Person holding a Claim against the Debtor.

1.16 "Class" means each class of Claims or Interests established and set forth in Article II of the Plan.

1.17 "Collateral" means any property or interest in property of the Debtor subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance or otherwise invalid under the Code or applicable state law.

1.18 "Confirmation" means the entry of a Final Order of the Bankruptcy Court confirming the Plan.

1.19 "Confirmation Date" means the date on which the Confirmation Order is entered by the Bankruptcy Court.

1.20 "Confirmation Hearing" means the hearing under § 1128 of the Code scheduled by the Bankruptcy Court for consideration of Confirmation of the Plan as it may be continued from time to time.

1.21 "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan.

1.22 "Creditor" means the holder of a Claim.

1.23 "Days" shall be calculated in accordance with Rule 6 of the Federal Rules of Civil Procedure.

1.24 "Debtor" means Blvck Bvlled Investments, LLC

1.25 "Disclosure Statement" means the Disclosure Statement filed or to be filed by Debtor in connection with this Plan, as modified, if applicable.

1.26 "Disputed Claim" means a Claim:
      (a) which is listed as disputed or contingent in the Debtors' Schedules as filed or as amended, or
      (b) which is listed as disputed under any provision of this Plan, or
      (c) as to which a proof of claim was timely filed and an objection to such Claim was filed within 60 days after the Effective Date.

1.27 "Effective Date" means the date that is 30 days after the Confirmation Order becomes a Final Order.

1.28 "Equipment" means all machinery, tools, motor vehicles, furniture and fixtures, and all parts thereof and all accessions thereto and all software related thereto, including software that is embedded in and is part of said Equipment, so as not to include any Inventory.

1.29 "Exempt Property" means property claimed as exempt on Schedule C (as amended, if applicable) filed by the Debtor, unless such exemption has been disallowed by the Bankruptcy Court upon timely objection.

1.30 "Estate" means the bankruptcy estate(s) of the Debtor. The use of the term in the singular does not mean that the estates are substantively consolidated.

1.31 "Executory Contracts" means all contracts, including unexpired leases, to which the Debtor was/were a party on the Petition Date and which were executory within the meaning of § 365 of the Code and which may be assumed or rejected by the Debtor.

1.32 "Final Decree" means the Final Order of the Bankruptcy Court that closes and dismisses the Case.

1.33 "Final Order" means an order or judgment of the Bankruptcy Court as entered on the docket in the case, that has not been reversed, stayed, modified, or amended, and as to which, either (i) the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely filed, or (ii) any appeal or petition for certiorari that has been filed has been resolved by the highest court to which the order or judgment was appealed from or from which certiorari was sought.

1.34 "Inventory" means all goods held for sale or lease, including all raw materials, work in process, finished goods, and material used or consumed in the manufacture, production, preparation or shipping thereof, so as not to include any Equipment.

1.35 "Lien" has the meaning set forth in §101(37) of the Code.

1.35A "Material Default" of the Debtor shall occur if (1) Debtor fails to make any payment required under the Plan, or to perform any other obligation required under the Plan, for more than 30 calendar days after the time specified in the Plan for such payment or other performance; (2) upon such failure, the affected creditor has served upon Debtor and Debtor's attorney a written notice of Debtor's default; and (3) Debtor fails within 30 calendar days after the date of service of the notice of default either: (i) to cure

the default; or (ii) to obtain from the court or affected creditor an extension of time to cure the default, or a determination that no default occurred.

1.36 "Miscellaneous Assets" means Assets other than Inventory, Equipment, Accounts Receivable or Avoidance Actions.

1.37 "Person" means an individual, a corporation, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, a government, or any political subdivision thereof, or other legal entity.

1.38 "Petition Date" means February 2, 2020, the date on which the voluntary petition for relief under Chapter 11 of the Code was filed by the Debtor.

1.39 "Plan" means this Plan, as it may be amended from time to time.

1.40 "Priority Claim" means a Claim made pursuant to § 507(a) of the Code, other than an Administrative Claim or a Professional Claim.

1.41 "Priority Tax Claim" means any Allowed Claim for taxes, including without limitation, income, property, withholding, payroll or excise taxes, or any penalty related to the foregoing to the extent such Claim is entitled to priority under § 507(a)(8) of the Code.

1.42 "Professional" means any attorney, accountant, appraiser, consultant, financial advisor or other professional retained or to be compensated pursuant to an order of the Bankruptcy Court entered under any provision of the Code.

1.43 "Professional Claim" means any Claim for compensation or reimbursement of a Professional arising at any time before the Confirmation Date.

1.44 "Proof of Claim" means a proof of Claim filed pursuant to § 501 of the Code and Part III of the Bankruptcy Rules.

1.45 "Rejection Claim" means a Claim arising from the rejection of an executory contract or unexpired lease in such amounts as are permitted by the Code and applicable law, and as are allowed by the Bankruptcy Court.

1.46 "Schedules" means the schedules of assets and liabilities and statement of financial affairs filed by the Debtor with the Bankruptcy Court and any amendments thereto.

1.47 "Secured Claim" means any Claim, debt, or demand against the Debtor as determined in accordance with § 506(a) of the Code which is secured by a properly perfected mortgage, deed of trust, Lien, pledge, or security interest in, or right of set off against, any Property of the Debtor, but only to the extent of the value of the Collateral as of the Confirmation Hearing.

1.48 "Unexpired Lease" means a lease of personal or realty which had neither expired by its terms nor been properly terminated as of the Petition Date, and which has not expired by its terms or been rejected by a Final Order on or prior to the Confirmation Date.

1.49 "Unliquidated Claim" means any Claim, the amount of liability for which has not been fixed, whether pursuant to agreement, applicable law, or otherwise, as of the date on which such Claim is sought to be estimated.

1.50 "Unsecured Claim" means any unsecured debt, demand, or Claim of whatever nature other than an Administrative Expense, a Professional Claim, a Priority Claim, a Priority Tax Claim, or a Secured Claim, to the extent as determined and allowed by the Bankruptcy Court in accordance with § 502 of the Code.

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

| | | |
|---|---|---|
| 2.01 | | All allowed claims entitled to priority under § 507 of the Code (except administrative expense claims under § 507(a)(2), ["gap" period claims in an involuntary case under § 507(a)(3),] and priority tax claims under § 507(a)(8)). |
| 2.02 | Classes 1-3. | The claims of Classes 1-3, to the extent allowed as a secured claim under § 506 of the Code. |
| 2.03 | Class 4 | Equity interests of the Debtor. |

## ARTICLE III
## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS

**3.01** **Unclassified Claims.** Under section § 1123(a)(1), administrative expense claims are not in classes.

**3.02** **Administrative Expense Claims.** Each holder of an administrative expense claim allowed under § 503 of the Code, will be paid in full on the effective date of this Plan (as defined in Article VII), in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

**3.03** **Priority Tax Claims.** Each holder of a priority tax claim, if one exists, will be paid upon terms consistent with § 1129(a)(9)(C) of the Code. Debtor is not aware of any priority claims.

**3.04** **United States Trustee Fees.** All fees required to be paid by 28 U.S.C. § 1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. Any U.S. Trustee Fees owed on or before the effective date of this Plan will be paid on the effective date.

## ARTICLE IV
## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

4.01 Claims and interests shall be treated as follows under this Plan:

A. **Class 1 (U.S. Bank National Association Secured Claim #1)**: Class 1 consists of the secured claim of U.S. Bank National Association ("US Bank"). Upon information and belief, US Bank asserts a first priority lien upon Debtor's real property located at 3413 Plantation Dr., Albany, Georgia 31721 (the "Plantation Property") pursuant to the Security Deed recorded in the records of the Superior Court of Dougherty County, Georgia on April 27, 2018 in Deed Book 4504, commencing on Page 252 (the "Plantation Security Deed") from Debtor, as borrower, to Angel Oak Prime Bridge, LLC. The

Plantation loan is being serviced by Select Portfolio Servicing, Inc. ("SPS"). Debtor asserts that the outstanding balance owed on the Plantation Security Deed on the Filing Date was approximately $99,433.31.

As of the Petition Date, the Debtor was approximately $11,594.72 in arrears on the Plantation Note. As of August 21, 2020, total arrears are $15,610.13 (the "Plantation Arrearage"). The Plantation Arrearage will be deferred as a non-interest bearing principal due as a balloon payment on the maturity date of the loan on May 1, 2048. Debtor agrees to make regular monthly contractual payments to SPS, including the escrow payment, currently in the amount of $796.16. These payments will be applied contractually to the loan as they are received. Payments will begin on September 1, 2020.

Payments shall be made directly to Secured Creditor, Select Portfolio Servicing, Inc., at Select Portfolio Servicing, Inc., Attn: Remittance Processing, P.O. Box 65450, Salt Lake City, UT 84165-0450, with reference to the last four digits of the Loan Number, or as otherwise directed.

US Bank will continue to impound this loan for taxes and insurance related to the Plantation Property and charge a monthly escrow payment in addition to Debtor's monthly principal and interest payment. Debtor is obligated to make the monthly escrow payment in addition to principal and interest payments. Any escrow advances will remain due and owing on the loan and will be repaid through the escrow loan account, except those that are included in the Total Arrears.

All other terms of the Plantation Security Deed and Plantation Note not directly altered by this agreement will remain in full force and effect.

Upon receipt of the then outstanding balance of the Class 1 Claim, Class 1 Lender (or its successor(s) or assign(s)) shall release its lien on the Plantation Property.

The Claim of the Class 1 Lender is impaired by the Plan and the Holder of Class 1 Claim is entitled to vote. Nothing herein shall constitute an admission as to the nature, validity, or amount of claim. Debtor reserves the right to object to any and all claims.

B. **Class 2 (U.S. Bank National Association Secured Claim #2)**: Class 2 consists of the secured claim of U.S. Bank National Association ("US Bank"). Upon information and belief, US Bank asserts a first priority lien upon Debtor's real property located at 2207 Vineyard Court Albany, GA 31721 (the "Vineyard Property") pursuant to the Security Deed recorded in the records of the Superior Court of Dougherty County, Georgia on April 27, 2018 in Deed Book 4504, commencing on Page 275 (the "Vineyard Security Deed") from Debtor, as borrower, to Angel Oak Prime Bridge, LLC. The Vineyard loan is being serviced by Select Portfolio Servicing, Inc. Debtor asserts that the outstanding balance owed on the Vineyard Security Deed on the Filing Date was approximately $101,232.30.

As of the Petition Date, the Debtor was approximately $10,367.83 in arrears on the Vineyard note. As of August 31, 2020, total arrears are $14,459.17 (the "Vineyard Arrearage"). The Vineyard Arrearage will be deferred as a non-interest bearing principal due as a balloon payment on the maturity date of the loan on April 1, 2048. Debtor agrees to make regular monthly contractual payments to US Bank, including the escrow payment, currently in the amount of $681.89. These payments will be applied contractually to the loan as they are received. Debtor will resume regular monthly payments on September 1, 2020.

Payments shall be made directly to Secured Creditor, Select Portfolio Servicing, Inc., at Select Portfolio Servicing, Inc., Attn: Remittance Processing, P.O. Box 65450, Salt Lake City, UT 84165-0450, with reference to the last four digits of the Loan Number, or as otherwise directed.

US Bank will continue to impound this loan for taxes and insurance related to the Vineyard Property and charge a monthly escrow payment in addition to Debtor's monthly principal and interest payment. Debtor is obligated to make the monthly escrow payment in addition to principal and interest payments. Any escrow advances will remain due and owing on the loan and will be repaid through the escrow loan account, except those that are included in the Total Arrears.

All other terms of the Vineyard Security Deed and Vineyard Note not directly altered by this agreement will remain in full force and effect.

Upon receipt of the then outstanding balance of the Class 2 Claim, Class 2 Lender (or its successor(s) or assign(s)) shall release its lien on the Vineyard Property.

The Claim of the Class 2 Lender is impaired by the Plan and the Holder of Class 2 Claim is entitled to vote. Nothing herein shall constitute an admission as to the nature, validity, or amount of claim. Debtor reserves the right to object to any and all claims.

C. **Class 3 (U.S. Bank National Association Secured Claim #3)**: Class 3 consists of the secured claim of U.S. Bank National Association ("US Bank"). Upon information and belief, US Bank asserts a first priority lien upon Debtor's real property located at 4826 Marlborough Avenue, Albany, Georgia 31721 (the "Marlborough Property") pursuant to the Security Deed recorded in the records of the Superior Court of Dougherty County, Georgia on September 18, 2017 in Deed Book 4447, commencing on Page 1 (the "Marlborough Security Deed") from Debtor, as borrower, to Angel Oak Prime Bridge, LLC. The Marlborough loan is being serviced by BSI Financial Services. Debtor asserts that the outstanding balance owed on the Marlborough Security Deed on the Filing Date was approximately $196,975.63. Debtor values the Marlborough Property at $196,975.63 (such amount, plus interest accruing pursuant to the following paragraph, is referred to herein as the "Secured Class 3 Claim").

Any payments paid to US Bank on its Secured Class 3 Claim after the Filing Date but before the Effective Date, including any adequate protection payments, shall be applied to the principal balance of the Secured Class 3 Claim. Debtor shall pay the Secured Class 3 Claim amortized over a 360 month term with interest accruing at the annual rate of 4.5% from the Effective Date with payment commencing on the Effective Date and continuing by the 30th day of each subsequent month in the estimated amount of $998.05 per month. Debtor shall send such payments directly to US Bank. Any payments in excess of the aforementioned monthly payment after the Effective Date shall be applied to the principal balance of the Secured Class 3 Claim.

US Bank shall retain its lien on the Marlborough Property and the lien shall be valid and fully enforceable to the same validity, extent and priority as existed on the Filing Date (i.e. $196,975.63). Debtor shall continue to remit insurance and tax escrow payments for the Marlborough Property to US Bank in accordance with the pre-petition loan documents and practices between the parties. If Debtor and US Bank cannot come to an agreement on the escrow practices within 60 days of confirmation, Debtor will pay its property taxes and insurance separately, and any escrow balance held by US Bank will be refunded to Debtor.

All other terms and provisions in the Marlborough Security Deed and related loan documents not specifically modified herein shall remain unaltered and in full force and effect following the confirmation of Debtor's Plan.

Upon receipt of the then outstanding balance of the Secured Class 3 Claim, Class 3 Lender (or its successor(s) or assign(s)) shall release its lien on the Marlborough Property.

The Claim of the Class 3 Lender is impaired by the Plan and the Holder of Class 3 Claim is entitled to vote. Nothing herein shall constitute an admission as to the nature, validity, or amount of claim. Debtor reserves the right to object to any and all claims.

D. **Class 4 (Equity Security Holders).** Class 4 consists of the Equity Holders of the Debtor. Each equity security holder will retain its/his Interest in the reorganized Debtor as such Interest existed as of the Petition Date. This class is not impaired and is not eligible to vote on the Plan.

## ARTICLE V
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.01    <u>Disputed Claim</u>.  A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.02    <u>Delay of Distribution on a Disputed Claim</u>.  No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

5.03    <u>Settlement of Disputed Claims</u>.  The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## ARTICLE VI
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.01    Assumed Executory Contracts and Unexpired Leases.

(a) The Debtor assumes the following executory contracts and/or unexpired leases effective upon the effective date of this Plan: Any lease previously assumed pursuant to an Order of this Court or any residential real property lease in which the lessee is a tenant of the Debtor.

(b) The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under section 6.01(a) above, or before the date of the order confirming this Plan, upon the effective date of this Plan  A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than 60 days (60) days after the date of the order confirming this Plan.

## ARTICLE VII
## MEANS FOR IMPLEMENTATION OF THE PLAN

7.01    Parties Responsible for Implementation of the Plan. Upon confirmation, Debtor will be charged with administration of the Case. Debtor will be authorized and empowered to take such actions as are required to effectuate the Plan. Debtor will file all post-confirmation reports required by the United States Trustee's office. Debtor will also file the necessary final reports and will apply for a final decree as soon as practicable after substantial consummation, the completion of the claims analysis and objection process, and following entry of Final Orders in all Bankruptcy Court litigation. Debtor may be authorized to reopen this case after the entry of a Final Decree to enforce the terms of the Plan including for the purpose of seeking to hold a party in contempt or to enforce the confirmation or discharge injunction or otherwise afford relief to Debtor. The fee associated with the Debtor's motion to reopen Debtor's case may be waived, and Debtor may not be responsible for payment of such to the Clerk of Court for the Bankruptcy Court of the Northern District of Georgia or otherwise.

kvng.dum enterprises limited liability company will continue to be the Manager of the Debtor and will be entitled to any net proceeds after plan payments are made.

7.02    Source of Cash Distributions. The source of funds for payments pursuant to the Plan will be the rental income from the Debtor. The Plan provides that Debtor shall act as the Disbursing Agent to make payments under the Plan unless Debtor appoints some other entity to do so. Debtor may maintain bank accounts under the confirmed Plan in the ordinary course of business. Debtor may also pay ordinary and necessary expenses of administration of the Plan in due course.

      7.03    Preservation of Causes of Action. In accordance with section 1123(b)(3) of the Bankruptcy Code, Debtor will retain and may (but is not required to) enforce all Retained Actions. After the Effective Date, Debtor, in its sole and absolute discretion, shall have the right to bring, settle, release, compromise, or enforce such Retained Actions (or decline to do any of the foregoing), without further approval of the Bankruptcy Court. Debtor (or any successors, in the exercise of their sole discretion), may pursue such Retained Actions so long as it is the best interests of Debtor (or any successors holding such rights of action). The failure of Debtor to specifically list any claim, right of action, suit, proceeding or other Retained Action in this Plan does not, and will not be deemed to, constitute a waiver or release by Debtor of such claim, right of action, suit, proceeding or other Retained Action, and Debtor will retain the right to pursue such claims, rights of action, suits, proceedings and other Retained Actions in their sole discretion and, therefore, no preclusion doctrine, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches will apply to such claim, right of action, suit, proceeding or other Retained Actions upon or after the confirmation or consummation of this Plan. Debtor reserve all causes of actions for breach of any former or now existing agreement or otherwise. Any failure by Debtor to assert or set forth the occurrence of any other default or events of default which may have occurred shall not be deemed to be a waiver, release or estoppel of such other default or event of default. Debtor hereby expressly reserves the right to declare any such other default or event of default and to take such other action as Debtor may be entitled to applicable law. No delay on the part of Debtor in exercising any right or remedy shall operate as a waiver in whole or in part of any right or remedy. The Disclosure Statement and Plan are filed with a full reservation of rights.

      7.04    Effectuating Documents, Further Transactions. Debtor is authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such action as may be necessary, desirable or appropriate to effectuate and further evidence the terms and conditions of this Plan or to otherwise comply with applicable law.

      7.05    Further Authorization. Debtor shall be entitled to seek such orders, judgments, injunctions and rulings as it deems necessary or desirable to carry out the intentions and purposes, and to give full effect to the provisions, of this Plan.

      7.06    Liabilities of Debtor. Debtor will not have any liabilities except those expressly assumed under the Plan. Debtor will be responsible for all expenses incurred by Debtor in the ordinary course of business after the Filing Date, and those expenses will be paid in the ordinary course of business as they become due or as agreed upon by holders of the expense claim.

## ARTICLE VIII
## GENERAL PROVISIONS

      8.01    <u>Definitions and Rules of Construction</u>.  The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan.

      8.02    <u>Effective Date of Plan</u>.  The effective date of this Plan is the 30th business day following the date of the entry of the order of confirmation.  But if a stay of the confirmation order is in effect on that date, the effective date will be the first business day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

      8.03    <u>Severability</u>.  If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.04    Binding Effect.  The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

8.05    Captions.  The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

8.06    Controlling Effect.  Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Georgia govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

8.07    Vesting of Debtor's Assets: Except as otherwise explicitly provided in the Plan, on the Effective Date, all property comprising the Estate (including Retained Actions, but excluding property that has been abandoned pursuant to an order of the Bankruptcy Court) shall revest in Debtor free and clear of all Claims, Liens, charges, encumbrances, rights and Interests of creditors and equity security holders, except as specifically provided in the Plan. As of the Effective Date, Debtor may use, acquire, and dispose of property and settle and compromise Claims or Interests without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and Confirmation Order.

8.08    Revocation: The Debtor reserves the right to revoke, and withdraw the Plan prior to Confirmation. If the Debtor revokes and/or withdraw the Plan, then the Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Debtor, or any other person or entity or to prejudice in any manner the rights of such parties in any further proceedings involving the Debtor.

8.09    Liabilities: Debtor will not have any liabilities except those expressly assumed under the Plan. Debtor will be responsible for all ongoing expenses and payments due and owing under the confirmed Plan.

8.10    Plan Controls: In the event, and to the extent that any provision of the Plan is inconsistent with the provisions of the Disclosure Statement, or any other agreement or instrument required or contemplated to be executed by the Debtor or any other entity pursuant to the Plan, the provisions of the Plan shall control and take precedence. In the event of any inconsistency between any provision of any of the foregoing documents and any provision of the Confirmation Order, the Confirmation Order shall control and take precedence.

## ARTICLE IX
## DISCHARGE

9.01    Discharge.  On the confirmation date of this Plan, the debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the effective date, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt:  (i) imposed by this Plan; (ii) of a kind specified in § 1141(d)(6)(A) if a timely complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure; or (iii) of a kind specified in § 1141(d)(6)(B).

## ARTICLE X
## OTHER PROVISIONS- JURISDICTION

The Court shall retain jurisdiction over the parties to, and the subject matter of, this Plan and all matters related thereto until the Plan has been fully consummated and the case closed, or until the case is dismissed or converted to another chapter of the Code.

Respectfully submitted this 21st day of August, 2020,

By: /s/ Will Geer
Attorney for the Plan Proponent